# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| CITY OF SIOUX FALLS,<br><br>            Plaintiff,<br><br>   v.<br><br>CLARIANT CORPORATION,<br><br>           Defendant. | Civil Case No.: |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, City of Sioux Falls ("Plaintiff"), by and through its undersigned counsel, brings this action against Defendant, Clariant Corporation ("Defendant") and alleges as follows, based on information and belief and investigation of Counsel:

## SUMMARY OF THE CASE

1.　Plaintiff, City of Sioux Falls, files this Complaint as a Protective Action against Defendant, Clariant Corporation, which it has already filed suit for the damages cited herein in the United States District Court for the District of South Carolina, Charleston Division, in Multi-District Litigation No. 2873 pending before the Honorable Judge Richard M. Gergel under the case caption, *City of Sioux Falls v. 3M Company (f/k/a Minnesota Mining and Manufacturing Company), et al.*, Civil Case No. 2:19-cv-01806-RMG. Therein, Plaintiff sets forth the same factual and legal allegations set forth herein and Defendant has filed a Motion to Dismiss citing a lack of jurisdiction in the Home Venue of the United States District Court for the District of South Dakota.[1] Plaintiff files the instant Complaint as a protective measure to preserve its rights against

---

[1] Plaintiff identified the United States District Court for the District of South Dakota pursuant to and in accordance with MDL No. 2873, Case Management Order No. 3, paragraph 27, available at https://www.scd.uscourts.gov/mdl-2873/orders/CMO%203.pdf.

Clariant Corporation should Defendant prevail in its pending Motion to Dismiss in the United States District Court for the District of South Carolina, Charleston Division.

2.      Plaintiff brings this action against Defendant to recover any and all past and future compensatory and/or consequential damages for the investigation, remediation, treatment, removal, disposal, and/or monitoring of the ongoing contamination of its wells, water supplies, water system, groundwater, and water treatment system caused and/or created by Defendant's products, as well as any and all other damages available as a result of the actions and/or inactions of Defendant.

3.      Plaintiff is a municipal corporation chartered under South Dakota law. Plaintiff provides municipal utility services, including but not limited to potable water service, within the Sioux Falls municipal boundaries and to other municipalities in Minnehaha County and Lincoln County.

4.      Plaintiff has a property interest in the water it appropriates, treats, stores, and distributes to the public, as well as its water sources, water supplies, wells, piping, distribution system, water treatment center, wastewater center, facilities, properties, and lands (collectively, "Plaintiff's Property").

5.      Plaintiff's Property has been contaminated with per- and polyfluoroalkyl substances ("PFAS"), including but not limited to perfluorooctanoic acid ("PFOA") and the chemical precursors to PFOA.[2]

6.      PFOA is a man-made compound that is toxic and persistent in the environment, does not biodegrade, moves readily through soil and groundwater, and poses a significant risk to human health and safety and the environment.

---

[2] PFOA and the chemical precursors to PFOA are collectively referred to in this Complaint as "Fluorosurfactant Products."

7.      At various times from the 1990s through today, Defendant designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products for use in various products, including but not limited to aqueous film-forming foam ("AFFF").

8.      AFFF is a firefighting agent used to control and extinguish Class B fuel fires and is used at sites such as military bases, airports, petroleum refineries, and fire training centers.

9.      Upon information and belief, AFFF manufactured and/or formulated with Defendant's Fluorosurfactant Products was released, used, stored, and/or disposed of at, near, and/or in the vicinity of Plaintiff's Property.

10.     Defendant designed, manufactured, formulated, marketed, distributed, and/or sold Fluorosurfactant Products with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities, even when used as directed and intended by Defendant.

11.     Upon information and belief, at all times pertinent herein, Defendant's Fluorosurfactant Products have been released, used, stored, and/or disposed of at, near, and/or in the vicinity of Plaintiff's Property for fire protection, training, and response activities.  During these activities, Defendant's Fluorosurfactant Products were stored, used, cleaned up, and/or disposed of as directed and intended by the Defendant, which allowed PFOA and/or its chemical precursors to enter the environment, and migrate through the soil, sediment, surface water, and groundwater, thereby contaminating Plaintiff's Property.

12.     As a result of the use of Defendant's Fluorosurfactant Products for their intended purpose, PFOA and/or its chemical precursors have been detected in Plaintiff's Property at substantial levels.

13.     Plaintiff's Property has been, and continues to be, contaminated by Defendant's Fluorosurfactant Products.

14. At all times pertinent herein, Plaintiff did not know, nor should it have known, of the ongoing contamination of its Property through the use, release, storage, and/or disposal of Defendant's Fluorosurfactant Products.

15. Through this action, Plaintiff seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, treat, remediate, remove, filter, dispose of, and/or monitor the PFOA contamination of Plaintiff's Property caused by the handling, storage, use, or disposal of Defendant's Fluorosurfactant Products at or near Plaintiff's Property, as well as any and all other damages recoverable under state and/or applicable federal laws. Plaintiff also seeks damages and restitution for the diminution of value of Plaintiff's Property, punitive damages, as well as reasonable attorneys' fees and costs.

## PARTIES

16. Plaintiff City of Sioux Falls is a municipal corporation and public water provider, existing under the laws of the State of South Dakota, with its primary address at 231 N. Dakota Avenue, Sioux Falls, South Dakota, 57104. Plaintiff supplies, treats, and distributes water to customers in Minnehaha and Lincoln Counties and in the city limits of Sioux Falls.

17. Defendant Clariant Corporation is a New York corporation that conducts and/or avails itself of doing business throughout the United States, including in South Dakota. Its principal place of business is located at 4000 Monroe Road, Charlotte, North Carolina 28205.

18. Upon information and belief, Defendant designed, manufactured, formulated, marketed, promoted, distributed, sold, and/or acquired or assumed liabilities for the manufacture and sale of Fluorosurfactant Products used in the manufacture and/or formulation of AFFF that have and continue to contaminate Plaintiff's Property.

19. Any and all references to a Defendant in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendant.

4

20.     When reference is made to any act or omission of the Defendant, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendant committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendant, and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendant, and the amount in damages exceeds the minimal jurisdictional limits of this Court.

22.     Venue is proper in the United States District Court for the Western District of North Carolina, Charlotte Division, pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Defendant's principal place of business is located and part of the events or omissions giving rise to this action occurred in this judicial district.

23.     Plaintiff asserts that the laws of the State of South Dakota govern the Plaintiff's claims set forth herein.  South Dakota is where the contamination/injury occurred and is also the location of Plaintiff's Property.  To the extent the laws of the State of South Dakota do not apply, Plaintiff hereby asserts that Defendant's actions and/or inactions violated any and all applicable laws relevant to products liability (design defect and failure to warn), negligence, trespass, nuisance, and any other causes of action set forth herein.

## FACTUAL ALLEGATIONS

### A.  THE CONTAMINANT: PFOA

24.     PFOA is a man-made chemical within a class known as perfluoroalkyl acid ("PFAA").  PFAAs are part of the larger chemical family known as per- and polyfluoroalkyl substances ("PFAS").  PFAA is composed of a chain of carbon atoms in which all but one of the

5

carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent. PFOA contains eight carbon-fluorine bonds. For this reason, it is sometimes referred to as "C8."

25.     PFAAs are sometimes described as long-chain and short-chain, depending on the number of carbon atoms contained in the carbon chain. PFOA is considered a long-chain PFAA because it contains eight carbon atoms in its chain; short-chain PFAAs have six or less carbon atoms in their chains.

26.     PFOA is highly water soluble, which increases the rate at which it spreads throughout the environment, contaminating soil, groundwater, and surface water. Its mobility is made more dangerous by its persistence in the environment and resistance to biologic, environmental, or photochemical degradation.[3]

27.     PFOA is readily absorbed in animal and human tissues after oral exposure and accumulates in the serum, kidney, and liver. It has been found globally in water, soil and air, as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[4]

28.     PFOA is persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[5]

29.     Since it was first produced, information has emerged showing negative health effects caused by exposure to PFOA.

30.     According to the United States Environmental Protection Agency ("EPA"), "…studies indicate that exposure to PFOA over certain levels may result in…developmental

---

[3] *See* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 55, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[4] *See* Agency for Toxic Substances and Disease Registry, Per- and Polyfluoroalkyl Substances and Your Health, available at https://www.atsdr.cdc.gov/pfc/health_effects_pfcs.html.
[5] *See* EPA Document Number: 822-R-16-005 (May 2016) at 55.

effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[6]

31.     EPA has also warned that "there is suggestive evidence of carcinogenic potential for PFOA."[7]

32.     EPA has noted that drinking water can be an additional source of PFOA in the body in communities where this chemical has contaminated water supplies. In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example…an airfield at which [Fluorosurfactant Products] were used for firefighting."[8]

**B.  AQUEOUS FILM-FORMING FOAM**

33.     AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

34.     Defendant designed, formulated, manufactured, distributed, and/or sold its Fluorosurfactant Products for use in the manufacture and/or formulation of AFFF.

35.     Defendant's Fluorosurfactant Products were utilized in the manufacture and/or formulation of AFFF.

---

[6] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[7] *See* "Health Effects Support Document for Perfluorooctanoic Acid (PFOA)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[8] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

7

36.     Upon information and belief, AFFF manufactured and/or formulated with Defendant's Fluorosurfactant Products was released, used, stored, and/or disposed of at, near, and/or in the vicinity of Plaintiff's Property.

37.     AFFF can be made without PFOA or its precursor chemicals. Fluorine-free and short-chains foams do not release PFOA or its precursor chemicals into the environment.

38.     AFFF is used to extinguish fires that are difficult to fight, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it works by coating the ignited fuel source, preventing its contact with oxygen and suppressing combustion.

39.     When used as the Defendant intended and directed, Defendant's Fluorosurfactant Products release PFOA and/or its precursor chemicals into the environment.

40.     Once PFOA is free in the environment, it does not hydrolyze, photolyze or biodegrade under typical environmental conditions, and is extremely persistent in the environment. As a result of its persistence, it is widely distributed throughout soil, sediment, surface water and groundwater.

41.     The use of Defendant's Fluorosurfactant Products as directed and intended by the Defendant allowed PFOA and/or its precursor chemicals to enter into and onto Plaintiff's Property where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the surface water, soil, sediment, and groundwater, as well as causing other extensive and ongoing damage to Plaintiff's Property.

42.     Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to cause injury and damage to Plaintiff's Property.

8

## C. DEFENDANT'S KNOWLEDGE OF PFOA HAZARDS

43.     On information and belief, by the early 1990s, Defendant knew, or reasonably should have known, among other things, that: (a) PFOA is toxic; and (b) when AFFF containing PFOA and/or its precursor chemicals is sprayed in the open environment, per the instructions given by the manufacturer, PFOA readily migrates through the subsurface, mixes easily with surface water and groundwater, resists natural degradation, renders drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

44.     Defendant also knew, or reasonably should have known, that PFOA could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA can persist in the body for prolong periods of time.

45.     By the early 1980s, the industry suspected a correlation between PFOA exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in workers' bodies and birth defects in children of workers.

46.     In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[9]

47.     Notwithstanding this knowledge, Defendant negligently and carelessly: (a) designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting PFOA and/or its precursor chemicals to contaminate Plaintiff's Property, including Plaintiff's water resources; (c) failed to recall and/or warn the users of Fluorosurfactant Products, negligently

---

[9]  *See* Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

designed products containing or degrading into PFOA, of the dangers of surface water, soil, sediment and groundwater contamination as a result of standard use and disposal of these products; and (d) further failed and refused to issue the appropriate warnings and/or recalls to the users of Fluorosurfactant Products, notwithstanding the fact that Defendant knew or could reasonably ascertain the identities of the purchasers of the Fluorosurfactant Products.

48. As a direct result of Defendant's actions and/or inactions alleged in this Complaint, Plaintiff's Property has been and will continue to be contaminated with PFOA, creating an environmental hazard, unless such contamination is remediated. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff must assess, evaluate, investigate, monitor, treat, remove, clean up, correct, and/or remediate PFOA contamination on its Property at significant expense, loss and damage.

49. Defendant had a duty and breached its duty to evaluate and test such Fluorosurfactant Products adequately and thoroughly to determine their potential human health and environmental impacts before they sold such products. Defendant also had a duty and breached its duty to minimize the environmental harms caused by Fluorosurfactant Products.

**D. THE IMPACT OF PFOA ON PLAINTIFF'S PROPERTY**

50. PFAS have been detected in water extracted from Plaintiff's Property. PFOA has been detected and/or is present in certain of areas of Plaintiff's Property. It is the contention of Plaintiff that any detectible level of PFOA in its Property requires investigation, treatment, remediation and/or monitoring.

51. The detection and/or presence of PFOA, and the threat of further detection and/or presence of PFOA, in Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injuries and damage to Plaintiff.

10

52.     On information and belief, the invasion of Plaintiff's Property with PFOA is recurring, resulting in new harm to Plaintiff on each occasion.

53.     The injuries to Plaintiff caused by Defendant's conduct constitute an unreasonable interference with, and damage to, Plaintiff and Plaintiff's Property. Plaintiff's interests in protecting its Property constitute a reason for seeking damages sufficient to restore such Property to its pre-contamination condition, in addition to the other damages sought herein.

54.     As a direct result of Defendant's conduct, Plaintiff has had to address PFAS contamination of many of its groundwater wells. In doing so, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFOA and/or its precursor chemicals, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, punitive damages, attorneys' fees, and all other equitable and applicable damages.

## **FIRST CAUSE OF ACTION**

### STRICT LIABILITY – DESIGN DEFECT AND/OR DEFECTIVE PRODUCT

55.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

56.     Defendant was engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and selling Fluorosurfactant Products.

57.     Defendant designed, formulated, refined, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products for use in AFFF.

58.     Defendant represented, asserted, claimed, and warranted that its Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

11

59.     As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of Fluorosurfactant Products, Defendant owed a duty to all persons whom Defendant's Fluorosurfactant Products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

60.     Defendant's Fluorosurfactant Products used at or near Plaintiff's Property were used in a reasonably foreseeable manner and without substantial changes in the condition in which they were sold.

61.     Defendant knew, or should have known, that use of Defendant's Fluorosurfactant Products in their intended manner would result in the release of PFOA and/or its precursor chemicals into the surface water, soil, sediment and groundwater.

62.     Defendant's Fluorosurfactant Products used at or near Plaintiff's Property were defective in design and unreasonably dangerous because, among other things: (a) PFOA causes soil and water contamination, even when used in its foreseeable and intended manner; (b) even at extremely low levels, PFOA renders drinking water unfit for consumption; (c) PFOA poses significant threats to public health; and (d) PFOA creates real and potential damage to the environment.

63.     Defendant committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendant's acts and/or omissions were performed to promote sales of its Fluorosurfactant Products, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare.

64.     As a direct and proximate result of Defendant's above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFOA and/or its precursor chemicals, including but not limited to the

investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, punitive damages, attorneys' fees, and all other equitable and applicable damages.

## SECOND CAUSE OF ACTION

### STRICT LIABILITY – FAILURE TO WARN

65.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

66.     As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of Fluorosurfactant Products, Defendant had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by PFOA.

67.     Defendant knew that its Fluorosurfactant Products would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA pose to human health and the environment.

68.     Defendant breached its duty to warn by unreasonably failing to provide Plaintiff, public officials, purchasers, downstream handlers, and/or the general public with warnings about the potential and/or actual threat to human health and contamination of the environment by PFOA, despite Defendant's knowledge that PFOA was real and potential threats to the environment and human health.

69.     Fluorosurfactant Products purchased or otherwise acquired from Defendant were used, discharged, released, and/or disposed of at, near, or in the vicinity of Plaintiff's Property.

70.     Defendant's Fluorosurfactant Products were used in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

71.     Defendant's Fluorosurfactant Products used, discharged, released, and/or disposed of at, near, or in the vicinity of Plaintiff's Property were defective in design and unreasonably dangerous for the reasons set forth above.

13

72. Despite the known and/or foreseeable environmental and human health hazards associated with the use, discharge, release and/or disposal of Defendant's Fluorosurfactant Products at, near, or in the vicinity of Plaintiff's Property, including contamination of Plaintiff's Property with PFOA, Defendant failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

73. In particular, Defendant failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of its Fluorosurfactant Products.

74. Defendant committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendant's acts and/or omissions were performed to promote sales of its Fluorosurfactant Products, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare.

75. As a direct and proximate result of Defendant's above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFOA and/or its precursor chemicals, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, punitive damages, attorneys' fees, and all other equitable and applicable damages.

## THIRD CAUSE OF ACTION

### PUBLIC NUISANCE

76. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

77. Defendant designed, manufactured, distributed, marketed, and/or sold its Fluorosurfactant Products in a manner that created, or participated in creating, a nuisance that

14

unreasonably endangers or injures the property, health, safety, and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

78.    Defendant has, by its acts and omissions set forth above, among other things, knowingly unleashed long-lasting and ongoing PFOA contamination and threat of PFOA contamination upon Plaintiff's Property.

79.    The Plaintiff's Property, including but not limited to the water sources that supply Plaintiff's wells, has been and continue to be contaminated by PFOA and/or its chemical precursors.

80.    Actual and threatened PFOA contamination caused by Defendant's conduct has caused, and continues to cause, injury to Plaintiff in the form of present and serious interference with the use, benefit, and/or enjoyment of Plaintiff's Property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

81.    Defendant's conduct has also threatened, and continues to threaten, the property, health, safety, and/or comfort of a considerable number of persons, including a considerable number of persons in Plaintiff's service area.

82.    PFOA contamination constitutes a current, as well as prospective, public nuisance.

83.    Defendant knew or, in the exercise of reasonable care, should have known that the use and introduction of its Fluorosurfactant Products into the environment would and has continuously, unreasonably and seriously endangered and interfered with the ordinary safety, use, benefit, and enjoyment of Plaintiff's Property.

84.    Defendant committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendant's acts and/or omissions were performed to promote sales of its Fluorosurfactant Products, in conscious disregard to the probable

dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare.

85.     As a direct and proximate result of Defendant's above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFOA and/or its precursor chemicals, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, punitive damages, attorneys' fees, and all other equitable and applicable damages.

## FOURTH CAUSE OF ACTION

### PRIVATE NUISANCE

86.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

87.     Plaintiff is the owner of land, property, and water rights that permit Plaintiff to extract groundwater for use in Plaintiff's wells to provide drinking water to its customers.

88.     Defendant's intentional, negligent, and/or reckless conduct, as alleged in this Complaint, has resulted in the contamination of Plaintiff's Property with PFOA and/or its precursor chemicals and, without intervention by Plaintiff, would render water undrinkable.

89.     Plaintiff, as the owner of its Property comprising its public water supply system and as a purveyor of drinking water, has suffered injuries different in kind from the community at large because Plaintiff relies upon its water supply system for its public service functions.

90.     Defendant's manufacture, distribution, sale, supply, and/or marketing of its Fluorosurfactant Products was unreasonable because Defendant knew, or reasonably should have known, of the dangerous characteristics and properties of PFOA, and knew that contamination of public groundwater sources and supplies was substantially certain to occur, but failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

16

91.     The contamination resulting from Defendant's Fluorosurfactant Products substantially and unreasonably interferes with Plaintiff's property rights to appropriate, use, and enjoy water from its Property.

92.     Defendant committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendant's acts and/or omissions were performed to promote sales of its Fluorosurfactant Products, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare.

93.     As a direct and proximate result of Defendant's above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFOA and/or its precursor chemicals, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, punitive damages, attorneys' fees, and all other equitable and applicable damages.

## FIFTH CAUSE OF ACTION

TRESPASS

94.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

95.     Plaintiff is the owner and operator of a public water supply system and other relevant structures associated therewith. Defendant knew, or in the exercise of reasonable care should have known, that PFOA contaminates water resources, including water resources utilized by and property of public water providers, such as Plaintiff.

96.     Defendant failed to properly warn against the use of Fluorosurfactant Products such that they proximately caused and continue to cause PFOA to contaminate Plaintiff's Property, including but not limited to its surface water and groundwater.

17

97.     The contamination of Plaintiff's Property has varied over time and has not yet ceased. PFOA continues to migrate into and enter Plaintiff's Property. The contamination is reasonably abatable.

98.     Plaintiff has not consented to, and does not consent to, this contamination.

99.     Defendant knew or reasonably should have known that Plaintiff would not consent to this trespass.

100.    Defendant committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendant's acts and/or omissions were performed to promote sales of its Fluorosurfactant Products, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare.

101.    As a direct and proximate result of Defendant's above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFOA and/or its precursor chemicals, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, punitive damages, attorneys' fees, and all other equitable and applicable damages.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE

102.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

103.    As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of Fluorosurfactant Products, Defendant owed a duty to Plaintiff, as well as to all persons whom Defendant's Fluorosurfactant Products might foreseeably harm, to exercise due care in the

instructing, labeling, and warning of the handling, control, use, and disposal of Defendant's Fluorosurfactant Products.

104.     Despite the fact that Defendant knew that PFOA is toxic, can contaminate soil and water resources, and presents significant risks to human health and the environment, Defendant negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting PFOA and/or its precursor chemicals to enter and contaminate Plaintiff's Property; (c) failed to recall and/or warn the users of Fluorosurfactant Products of the dangers of soil and water contamination as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of Fluorosurfactant Products regarding the proper use and disposal of these products, notwithstanding the fact that Defendant knew, or could determine with reasonable certainty, the identities of the purchasers of its Fluorosurfactant Products.

105.     Defendant committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendant's acts and/or omissions were performed to promote sales of its Fluorosurfactant Products, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare.

106.     As a direct and proximate result of Defendant's above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFOA and/or its precursor chemicals, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of

19

the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, punitive damages, attorneys' fees, and all other equitable and applicable damages.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE *PER SE*

107. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

108. Plaintiff alleges that Defendant negligently, carelessly and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled and/or sold Fluorosurfactant Products and/or negligently, carelessly and recklessly recommended application and disposal techniques for its Fluorosurfactant Products that they directly and proximately caused contamination of Plaintiff's Property, including its water sources, in violation of state law.

109. Defendant committed each of the above-described acts and/or omissions knowingly, willfully, and with oppression, fraud, and/or malice. Defendant's acts and/or omissions were performed to promote sales of its Fluorosurfactant Products, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare.

110. As a direct and proximate result of Defendant's above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFOA and/or its precursor chemicals, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, punitive damages, attorneys' fees, and all other equitable and applicable damages.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendant as follows:

1. Compensatory damages according to proof including, but not limited to:

20

a. costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination of Plaintiff's Property;

b. costs and expenses related to the past, present, and future treatment and remediation of PFAS contamination of Plaintiff's Property;

c. costs and expenses associated with and related to the filtration, removal and disposal of the contamination; and

d. costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within Plaintiff's Property.

2. Diminution of property value;

3. Punitive damages;

4. Consequential damages;

5. Costs, disbursements, and attorneys' fees of this lawsuit;

6. Pre-judgment and post-judgment interest; and

7. Any other and further relief as the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial.

Dated: May 14, 2021

Respectfully submitted,

J. Harold Seagle
**SEAGLE LAW, PLLC**
P.O. Box 15307
Asheville, N.C. 28813
Telephone: 828-774-5711
haroldseagle@charter.net

21

Scott Summy (NC 27171)
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Fax: (214) 520-1181

*Attorneys for Plaintiff*